**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK SKLADANY, | : |
| Plaintiff, | : Civil Action No. |
| | : 12-2497 (PGS) |
| v. | : |
| | : **MEMORANDUM OPINION** |
| FRANK PROVANZANO et al., | : |
| Defendants. | : |

**Sheridan**, District Judge:

Plaintiff Mark Skladany ("Plaintiff"), a pre-trial detainee confined at the Somerset County Jail ("SCJ"), Somerville, New Jersey, seeks to bring this action in forma pauperis, alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  **BACKGROUND**

Plaintiff named the following persons as Defendants in this matter: Frank Provanzano ("Provanzano," the Acting Head Sheriff at Anne Klein Forensic Center), Charles O'Neill ("O'Neill," the warden of SCJ), Thomas Kelly ("Kelly," the deputy warden of SCJ), Carlton Barker ("Dr. Barker," a physical at the SCJ), Celeste Muniz ("Muniz," a nurse at SCJ) and Jane Doe ("Doe," another nurse at SCJ). See Docket Entry No. 1.

The Complaint asserts that, on April 1, 2011, Plaintiff was playing basketball and injured his hand. See id. at 8. Since Plaintiff informed an SCJ housing officer of his injury, he was called to the SCJ medical department in the afternoon of the same day and detailed the circumstances and nature of his injury to Doe, who stated that she was unable to treat the injury on her own but scheduled Plaintiff to see a doctor the next day. See id. In the morning of April 2, 2011, Plaintiff was examined by Muniz and Dr. Barker, who recommended an x-ray, and Plaintiff was moved to a cell within the medical department in order to be transported to a hospital for an x-ray. See id. According to the Complaint, Muniz was arranging for Plaintiff's transportation to hospital, and Plaintiff, allegedly, overheard Muniz: (a) stating that Plaintiff's injury was rather minor; (b) inquiring whether the x-ray could be postponed until the weekend was over and staff would be available to accompany Plaintiff to the hospital; and (c) stressing that

Plaintiff's treatment to a hospital during the weekend hours would be unduly costly. See id. Plaintiff maintains that both Dr. Barker and Muniz agreed that Plaintiff's x-ray could be postponed 48 hours for financial reasons and, thus, provided him pain-killers and ice to alleviate his condition meanwhile. See id.

Forty-eight hours later, that is, in the morning of April 4, 2011, Plaintiff was sent to the hospital for an x-ray. See id. The x-ray disclosed a bone fracture within Plaintiff's hand, and he was referred to an orthopedist. See id. at 9. Apparently disappointed with this 48-hour delay, Plaintiff submitted a grievance to Kelly, who responded with the statement that medical care was provided to Plaintiff in a sufficiently timely fashion. See id. at 6 and 9. Meanwhile, Plaintiff was seen by an orthopedist 48 hours after his x-ray, i.e., on April 6, 2011, and the orthopedist aligned the fractured bone and casted Plaintiff's hand. See id. at 9.

Plaintiff alleges that: (a) the actions of Doe, too, amounted to deliberate indifference because Doe could not assist Plaintiff herself and could only arrange for Plaintiff to be seen by Dr. Barker and Muniz on the day following the injury; (b) the actions of Muniz and Dr. Barker amounted to deliberate indifference because Plaintiff's x-ray was administered not immediately but 48 hours after Dr. Barker and Muniz's examination of his hand; (c) the actions of Kelly amounted to deliberate indifference because Kelly

concluded that administration of an x-ray within 48-hours after Plaintiff's examination by Dr. Barker and Muniz was sufficiently timely; (d) the actions of Provanzano and O'Neill amounted to deliberate indifference because they were supervising officers at the SCJ.  See id. at 9-11.  Plaintiff, therefore, is seeking $1 million in compensatory damages and $1 million in punitive damages. See id. at 12.

## II.  **STANDARD OF REVIEW**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell

Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

> enhancement." Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . . Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

### III. **NOT VIABLE CLAIMS**

#### A. *Respondeat Superior* **Claims**

Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 169 (1985), and – in addition – supervising officials cannot be held

liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' personal involvement in the alleged wrongs. See Iqbal, 129 S. Ct. 1937; Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  With the same token, claims against the supervisors are subject to dismissal to the degree they are based solely on the respondeat superior theory.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation – even if it is operation under contract with the state – cannot be held liable for the acts of its employees and agents under those theories).

Here, Plaintiff asserted that Provanzano and O'Neill are liable to him because they were supervising officers at the SCJ. Since these claims are unambiguously based solely on the respondeat superior theory, they are subject to dismissal with prejudice.

  **B. Eighth Amendment Claims Against Doe, Dr. Barker and Muniz**

Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the

treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. See Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle, 429 U.S. at 103-04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that

constitutes deliberate indifference to that need. See id. at 106. To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. See id. at 347.

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is

actionable. See Durmer, 991 F.2d 64. Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays that deny medical care to suffering inmates. See Lanzaro, 834 F.2d at 346-47. However, inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, or to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures cannot amount to cruel and unusual punishment. See, e.g., White v. Napoleon, 897 F.2d 103 (3d Cir. 1990); Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005); Smith v. Sator, 102 F. App'x 907 (6th Cir. 2004); Lopez v. Kruegar, 1990 U.S. Dist. LEXIS 6808 (E.D. Pa. June 4, 1990); Coleman v. Crisp, 444 F. Supp. 31 (W.D. Okla. 1977).

Here, Plaintiff's allegations against Doe fail to state a cognizable claim. The one-day delay in being seen by a physician as a result of Doe's arrangement for Plaintiff's appointment with Dr. Barker cannot, at a matter of law, amount to deliberate indifference: Doe had no right to administer medical assistance to Plaintiff if she did not know how to do it, and her decision to schedule Plaintiff's appointment next day could not trigger a claim of constitutional magnitude. See Gandy v. Correctional Medical

Services, Inc., 2007 U.S. Dist. LEXIS 22872, at *5 (D.N.J. Mar. 29, 2007) ("Plaintiff would have the Court read broadly the proscription against delaying medical treatment for non-medical reasons. Prisoners are entitled to adequate care, not the best and most timely care possible, therefore the Court will not entertain the notion that any delay for non-medical reasons is constitutionally suspect") (citations omitted)).  Therefore, Plaintiff's claims against Doe are subject to dismissal with prejudice.

In contrast, Plaintiff's claims based on Dr. Barker and Muniz's alleged decision to postpone his x-ray for 48 hours for financial reasons cannot be dismissed at this juncture.  "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted).  Therefore, even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference.  See Rodriguez v. Plymouth Ambulance Service, 577 F.3d 816, 832 (2009) (state employees could be liable for four-day delay in treating prisoner who complained that his IV was causing him serious pain); Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) (guards could be liable for delaying treatment of broken nose for a day and a half); Edwards v. Snyder, 478 F.3d 827, 830-31 (7th Cir. 2007) (a plaintiff who painfully dislocated his finger

and was needlessly denied treatment for two days stated a deliberate-indifference claim, reversing the district court's dismissal); accord Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (holding that a court may only find deliberate indifference where the prison official delays medical treatment based on a non-medical reason or prevents a prisoner from receiving recommended medical care).

Therefore, Plaintiff's challenges against Dr. Barker and Muniz will be proceeded past the sua sponte dismissal stage.

### C. **Claims Against Kelly**

Plaintiff's claims against Kelly are facially deficient. First, it is worth noting that Plaintiff had no constitutional right to any response from Kelly at all.[1] Moreover, Plaintiff's displeasure with Kelly's assessment of the medical care provided to Plaintiff cannot provide a valid basis for constitutional

---

[1] The Fourteenth Amendment does not guarantee inmates a right to an investigation or a response from prison officials as to administrative grievances (or to any replies by prison officials to inmates' other complaints or demands of a grievance nature). See, e.g., Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996). Furthermore, if construed as a First Amendment allegation — rather than a Fourteenth Amendment one — an assertion that an official failed to respond to an inmate's grievance fails to state a cognizable claim. See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984). "Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications." Id.; see also Foraker v. Chaffinch, 501 F.3d 231, 237 (3d Cir. 2007).

challenge.  See Durmer v. O'Carroll, 991 F.2d 64, and Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); accord Nami v. Fauver, 82 F.3d 63 (3d Cir. 1996).[2]

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's application to proceed in this matter in forma pauperis will be granted.  Plaintiff's claims against Defendants Provanzano, O'Neill, Kelly and Doe, being not amenable to cure by amendment, will be dismissed with

---

[2] In Durmer, the Court of Appeals approved grant of summary judgment in favor of the Commissioner of Corrections and prison warden accused of deliberate indifference to the plaintiff's serious medical needs.  In that case, "the only allegation against either of these two defendants was that they failed to respond to letters the inmate-plaintiff sent to them explaining his predicament."  Durmer, 991 F.2d 64, 69.  The court concluded that "neither of these defendants . . . is a physician, and neither can be considered deliberately indifferent [because the] prisoner . . . was already being treated by the prison doctor."  Id. at 69.  Further elaborating on the same in Spruill, the Court of Appeals observed as follows: "If a prisoner is under the care of medical experts (two medical doctors in this case), a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability."  Spruill, 372 F.3d at 236.  Joint reading of Twombly, Nami, Dumer and Spruill leads this Court to conclude that a mere allegation by a prisoner that he filed grievances with prison officials about deficiencies of his ongoing medical care must be dismissed for failure to state a cognizable constitutional claim.

prejudice, while his claims against Dr. Barker and Muniz will be proceeded past the sua sponte dismissal stage.

An appropriate Order accompanies this Opinion.

*s/Peter G. Sheridan*
**PETER G. SHERIDAN,**
**United States District Judge**

Dated: May 31, 2012